UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:16-CR-19-HAB |
| ) | |
| LATWON FORD ) | |

## OPINION AND ORDER

Defendant Latwon Ford seeks compassionate release under 18 U.S.C §3582(c)(1)(A)(i) for the second time. (ECF No. 133). Ford withdrew his first request for compassionate release filed on April 10, 2020 (ECF No. 114). Since that time, Ford has been transferred to another Bureau of Prisons facility. He then filed the present motion for compassionate release asserting new grounds for relief, including: his increased risk of illness because he has the Sickle Cell trait, the fact that he has already contracted COVID-19 while incarcerated and COVID remains prevalent in BOP facilities, that a sentencing disparity applies to Hobbs Act robbery, and that he has engaged in extensive rehabilitative efforts while incarcerated. The motion is fully briefed and ripe for consideration. (ECF Nos. 137, 141). Because the Government is correct that Ford failed to exhaust his administrative remedies prior to filing his successive compassionate release motion, the Defendant's motion will be DENIED.

## **DISCUSSION**

For most of the life of the COVID-related compassionate release phenomenon, there was considerable confusion on whether exhaustion of remedies was jurisdictional, a claims-processing rule, or wholly unnecessary. That confusion was resolved, at least in this circuit, by the Seventh Circuit's decision in *United States v. Sanford*, 986 F.3d 779 (7th Cir. 2021). There, the Court answered affirmatively the question of "whether the exhaustion requirement is a mandatory claim-

processing rule and therefore *must* be enforced when properly invoked." *Id*. at 782 (original emphasis). Where, as here, the Government raises exhaustion as a defense (*see* ECF No. 137 at 8–10), a defendant must show that he has presented his request for release to the warden at his facility, and either: (1) he has exhausted administrative appeals (if the request was denied); or (2) he has waited "30 days from the receipt of such a request by the warden of the defendant's facility" to seek relief from the Court. 18 U.S.C. § 3582(c)(1)(A). Exhaustion is required each time a defendant seeks compassionate release. *United States v. Cain*, 2021 WL 388436 at *4 (D. Maine Feb. 3, 2021) (collecting cases).

Ford asserts that he properly exhausted his remedies in April 2020, before filing his first request for compassionate and he did not have to do so again prior to filing his second request. Ford is correct that before submitting his first request for compassionate release, he requested release from the warden at FCI McKean. (ECF No. 120). That request was grounded in Ford's argument that the BOP could not keep prisoners safe during the pandemic. The warden denied the request four days later. (*Id.*) Although the correspondence from the warden advises Ford of his appeal avenue, Ford has never suggested he appealed this denial. *See Sanford*, 986 F.3d at 781–82 ("the defendant must first present his request for compassionate release to the warden *and exhaust administrative appeals* (if the request is denied)…"). Thus, even if the Court could accept Ford's position that he made a request from the warden in April 2020 before filing his first request for compassionate release, that request alone does not show that he has fully exhausted his available administrative remedies after the warden denied his request.

More importantly, Ford did not, as he concedes, present the expanded grounds for his present motion to the warden at his current facility, FCI Gilmer, prior to filing that request with the Court. He acknowledges that he was transferred to FCI Gilmer in July 2021, before the filing

2

of his second compassionate release petition, but argues that he should not have to file a new request with the warden because "the circumstances of a global pandemic did not change when Mr. Ford transferred to FCI Gilmer." (ECF No. 141 at 3). This is simply not the law.

Successive compassionate release motions must independently satisfy the exhaustion requirement. *See United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020). Exhaustion ensures that the Bureau of Prisons has an opportunity to "articulate [its] decision and rationale" vis-à-vis a particular request for compassionate release, thus giving the district court the benefit of BOP's input. *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. 2021). Indeed, the Seventh Circuit has made it clear that district courts are "expect[ed] ... to give [BOP]'s analysis substantial weight." *Id.* Additionally, § 3582(c)(1)(A) requires issue exhaustion—that is, a defendant cannot exhaust administrative remedies on one ground and then file suit in court on an unrelated ground. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) ("Thus, because [the defendant] never asked the [Bureau of Prisons] to move the district court for his release based on the presence of COVID-19 at his prison and his risk of infection, his counsel could not properly file a motion for compassionate release on that basis.").

Here, regardless of the April 2020 request to the warden, Ford needed to exhaust his administrative remedies again before filing his successive request for compassionate release. "If a prisoner were only required to make one request to the BOP and forever after able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined." *United States v. Wardle*, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021). Indeed, it would "incentivize exactly the kind of 'line jumping' and 'charging straight to federal court' that administrative exhaustion is meant to prevent and removes the BOP from the important role it plays in evaluating prisoners' claims." *Id.* (quoting *United States v. Alam*, 960

F.3d 831, 834 (6th Cir. 2020). Ford did not exhaust his remedies for his successive compassionate release motion and, for this reason, the Court must dismiss his motion.[1]

## CONCLUSION

For the above reasons, the Defendant's Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A)(i) is DENIED. (ECF No.133).

SO ORDERED on December 16, 2021.

                                             s/ *Holly A. Brady*
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT

---

[1] Even if Ford had exhausted his administrative remedies, he has an uphill battle. The Seventh Circuit has all but eliminated the ability of prisoners to win compassionate release based on the risk of contracting COVID-19 in prison. The BOP offers COVID-19 vaccination to all federal prisoners. *United States v. Ugbah,* 4 F.4th 595, 597 (7th Cir. 2021) (citing *COVID-19 Vaccine Guidance* (Mar. 11, 2021)). Accordingly, the Seventh Circuit held, a prisoner who is medically able to receive or benefit from the available vaccines cannot use the risk of COVID-19 to obtain compassionate release. *Id.; United States v. Broadfield,* 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Ford has acknowledged the availability of the vaccine at BOP facilities but says he "has not been vaccinated due to the fear of the long-term effects of the vaccine…" (ECF No. 141 at 3–4). These admissions independently foreclose his quest for the Court to find extraordinary and compelling reasons exist due to the COVID-19 pandemic to warrant a sentence reduction.