UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:16-CR-19-HAB |
| ) | |
| LATWON FORD ) | |

**OPINION AND ORDER**

Defendant Latwon Ford asks the Court to reconsider its Opinion and Order denying his last request for Compassionate Release pursuant to §3582(c)(1)(A). (ECF No. 146). He contends that the time he has served reflects the seriousness of the offenses of conviction, that a two-year term of supervised release would adequately ensure his safe transition into society, and that his "extraordinary rehabilitation efforts while incarcerated" justify his release. That is not all. He contends that he has the sickle cell trait which makes him more susceptible to COVID-19 and his family circumstances warrant a reduction of sentence because his mother, who is the primary caretaker of his son, has Lupus and is at a heightened risk of severe illness from COVID-19. Because none of these factors, alone or in combination, constitute an extraordinary and compelling reason for a sentencing reduction, Ford's motion to reconsider his request for compassionate release is DENIED.

**DISCUSSION**

a. *Background*

Ford committed two violent Hobbs Act robberies in June 2015 and January 2016. On both occasions, he robbed the same Dollar General store in Leo, Indiana. During both robberies he brandished a firearm, demanded that the victim employee go to the safe and set the timer for it to open, and demanded money. During both robberies, Ford restrained the victim employee in the

bathroom. When the jig was up and he was confronted by police exiting the Dollar General after the second robbery, Ford reached towards his pocket causing the officer fear that Ford was reaching for a weapon and requiring him to repeat orders for him to get on the ground. Although Ford denied having any weapons, a handgun was located in the waistband of Ford's pants. Officers located a bag of petty cash and multiple bundles of cash in Ford's left pocket.

By way of a three-count indictment, the Government charged Ford with two counts of Hobbs Act Robbery (18 U.S.C. §1951(a) and (b)) and one count of brandishing a firearm during and in relation to a crime of violence (18 U.S.C. §924(c)). Ford pleaded guilty to all three counts. A presentence report (PSR) was completed and Ford received guidelines enhancements for brandishing a firearm during the first robbery and for restraining the victim. (PSR, ECF No. 67, ¶¶ 27-39). Based on a total offense level of 25 and a criminal history category II, Ford's guideline range for the Hobbs Act offenses was 63-78 months with a consecutive 7-years on the gun count. District Judge Theresa Springmann sentenced Ford to a below guidelines sentence of 51 months on the robbery counts to run concurrent to each other and consecutive to an 84-month sentence on the gun count, for a total term of imprisonment of 135 months. Ford is currently incarcerated at FCI Oxford with an anticipated release date of February 9, 2026.[1]

b. *Analysis*

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate

---

[1] This information was obtained from the online inmate locator for the BOP. The Government's response indicates that in August 2022, Ford was incarcerated at FCI Gilmer with an out date of 12/30/2025. The Court is unaware of the reasons or circumstances for the 2-month lengthening of Ford's anticipated release date.

2

compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

> (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motion, Defendant must first show that he has satisfied the statutory exhaustion requirement. The Government concedes that Defendant has properly exhausted his remedies. (ECF No. 150 at 8).[2]

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not yet been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly. *United States*

---

[2] Exhaustion is an affirmative defense that, when asserted by the Government, must be rebutted by the Defendant. Although the Government concedes the issue of exhaustion and thereby waives the defense here, the Court has nothing before it to demonstrate that he exhausted *all* his administrative remedies, including administrative appeals.

3

*v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)[3]. As a result, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, his age, his family circumstances, and whether there is in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes.[4] Second, the Court determines whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18

---

[3] Yet as *Gunn* made clear, the Guidelines' requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to track "applicable policy statements." And the Sentencing Commission has not yet issued a policy statement "applicable" to Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180

[4] At the time of this Opinion and Order, the Sentencing Commission has approved amendments to §1B1.13 which take effect November 1, 2023, absent congressional action to the contrary. The amendments expand the list of specified extraordinary and compelling reasons to include new provisions for when: (1) a defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" and who, without that care, "is at risk of serious deterioration in health or death;" U.S.S.G. §1B1.13 (1)(C); (2) a defendant, due to personal health risk factors and custodial status, is at increased risk of suffering severe medical complications or death as a result of exposure to an ongoing outbreak of infectious disease or public health emergency, U.S.S.G. §1B1.13 (1)(D); (3) a defendant's adult child's caretaker dies or is incapacitated and the adult child is incapable of self-care because of a mental or physical disability or a medical condition, U.S.S.G. §1B1.13 (3)(A);(4) a defendant's parent is incapacitated and the defendant would be the only available caregiver, U.S.S.G. §1B1.13 (3)(C); and (5) the defendant establishes that circumstances exist similar to those in (3)(A) through (3)(C) for any other immediate family member or for a person similar in kind to an immediate family member, U.S.S.G. §1B1.13 (3)(D). Additionally, the amendments include a new provision for a defendant who is the victim of physical or sexual violence by a correctional officer or contractor/employee of the BOP. U.S.S.G. §1B1.13 (4). https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf

U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### 1. Family Circumstances

Ford asserts that his release is appropriate due to his family circumstances. He argues that because his son's current caregiver, his mother, has Lupus and, at some unspecified time, had contracted COVID-19, she can no longer adequately care for his son. (ECF No. 146 at 4). Ford submitted a letter from his mother (ECF No 146-1 at 19) who writes that she recently gained custody of Ford's elementary aged son Mala'khi and Mala'khi's younger brother My'Kah.[5] She mentions her Lupus diagnosis and advises that she was diagnosed a year after Ford was incarcerated. She does not, however, indicate anywhere that the diagnosis incapacitates her or leaves her unable to care for Ford's son or the other child in her care.

The sad fact is that incarceration often affects an offender's family as much as the offender. So, it is true here. For reasons undisclosed to the Court, the mother of Ford's son and My'Kah recently gave "temporary guardianship" of both children to Ford's mother. (ECF No. 146-1 at 20). This terminology implies that whatever current issue the child's mother is facing, she would be able to resume caretaking responsibilities at some point. But the Court has no additional information about the mother's current inability to care for her children. Further, Janice Cave submitted a letter on Ford's behalf indicating that she has "adopted" the Ford family and is prepared to provide a home for Ford and his child upon his release from prison. (ECF No. 146-1). Thus, Ford has another potential resource to assist in the caretaking of his son.

---

[5] It is unclear to the Court whether My'Kah is also Ford's child as he repeatedly references only one child in his filings.

Application Note 1 to U.S.S.G. § 1B1.13 sets out the circumstances that amount to extraordinary and compelling reasons. Relevant to this argument, subpart (C) states:

<(C) Family Circumstances.-->

> <(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.>

> <(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.>

U.S.S.G. § 1B1.13, cmt., app. note 1(C). To fall within the Application Note, Ford would need to show that the caregiver for his children is dead or incapacitated. Neither is true. While Ford asserts that his mother's Lupus diagnosis may make her caretaking obligations more difficult, there is no evidence in the record of her incapacity. And, by his own submissions, it would appear that he has other options and resources available for the caretaking of his children. Thus, the Court does not find that Ford's desire to ease his mother's caretaking burden, while perhaps laudable, is an extraordinary and compelling reason for release. *See United States v. Quintana,* 2021 WL 4521150 at *3-5 (S.D. Ind. 2021).

### 2. Defendant's Medical Conditions

Next, Ford draws on the fact that he has the "sickle cell trait"[6] (not sickle cell disease itself) and that makes him more susceptible to health risks from COVID-19. But the Seventh Circuit has

---

[6] The CDC instructs that "[p]eople who inherit one sickle cell gene and one normal gene have sickle cell trait (SCT)." However, having SCT is not the same as having sickle cell disease (SCD). In fact, "[m]ost people with SCT do not have any symptoms of SCD." The CDC indicates the following conditions could be harmful for people with SCT: increased pressure in the atmosphere (from i.e., scuba diving); low oxygen levels in the air (from, i.e., mountain climbing, exercising hard in military boot camp, or training for athletic competitions); dehydration; and high altitudes. What is Sickle Cell Trait? | CDC. The BOP has many programming opportunities but as far as the Court is aware scuba diving and mountain climbing at high elevation are not on the list.

made it clear that arguments involving a prisoner's susceptibility to COVID-19 are tired and beleaguered ones.

Courts in this Circuit were once forced to go through an extended analysis when a defendant's medical conditions and COVID-19 were raised as the extraordinary and compelling reasons for release. That analysis is no longer necessary. Almost two years ago, the Seventh Circuit all but eliminated COVID-19 as a basis for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In *United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021), the court stated:

> Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

*Id.*

Vaccination is available to Ford, but he admits in his filings that he has not been vaccinated for COVID-19. He gives no explanation for this and there is nothing he presents showing that he would not benefit from receiving the vaccine. Additionally, just a few days ago on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on "widespread prevention and control measures like vaccination." https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/past-reports/02242023.html.  Given these circumstances, Ford has not demonstrated that having sickle cell trait is "extraordinary and compelling" nor can Ford's reliance on COVID-19 provide him a pathway to release.

   3. **Defendant's Rehabilitation**

Ford also points to his rehabilitative efforts as "extraordinary and compelling circumstances." But a defendant's "rehabilitation ... alone shall not be considered an extraordinary and compelling reason" warranting a sentence reduction, 28 U.S.C. § 994(t); rehabilitation may, with other factors, contribute to a finding that such circumstances exist. Ford is to be commended for his efforts at rehabilitating himself while incarcerated as these efforts reflect positively upon him. However, his efforts do not carry sufficient weight to merit a reduction in sentence.

### 4. Defendant's Reasons are not Extraordinary or Compelling Alone or in Combination

As discussed above, neither Defendant's family circumstances nor his own medical conditions are extraordinary of compelling on their own nor do they meet this standard when combined with his rehabilitative efforts during incarceration. The Court has considered the reasons together and finds them no more worthy of compassionate release. *United States v. Newton*, 996 F.3d 485, 489 (7th Cir. 2021) (finding that proposed extraordinary and compelling reasons must be considered cumulatively). Defendant's proposed reasons do not interact in a synergistic fashion where the whole is greater than the sum of its parts. Instead, the reasons are separate, with none particularly close to meeting the statutory requirements. The Court finds no extraordinary or compelling circumstances supporting release so Defendant's motion must be denied.

### c. The §3553(a) Factors

The Seventh Circuit has noted that where the Court does not find extraordinary and compelling reasons supporting release, it need not address the § 3553(a) factors. *See Thacker*, 4 F.4th at 576 (consideration of the § 3553(a) factors is required only "upon a finding that the prisoner has supplied such a [extraordinary and compelling] reason"). But for the sake of completeness the Court finds that those factors do not support Defendant's release. This is true even if Defendant could show extraordinary or compelling reasons for release.

Section 3553(a) requires that a court imposing a just sentence that is sufficient, but not greater than necessary, comply with the purposes of sentencing:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from future crimes by the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). To those ends, a court must consider these factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; ...
>
> (3) the kinds of sentence available;
>
> (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
>
> (5) any pertinent policy statement [in the Sentencing Guidelines];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7). The Court need only consider the applicable factors; consideration of one factor may show that the others do not matter. *Ugbah*, 4 F.4th at 598.

Beginning with the nature and circumstances of the offense, the Court finds the offense conduct particularly egregious. Ford robbed the same Dollar General store, not just once, but twice. Both times he put the same employee in fear for her life moving her around the store at gunpoint and pointing a loaded handgun at her. This was all before restraining her in a bathroom as he fled out the back door.

The Defendant's criminal history, while not particularly long, shows a path of escalation. When he committed the second robbery, Ford was out on bond and under state release conditions for another gun offense that occurred a few days after the first robbery. In fact, Ford was scheduled to be in state court on the same day he committed the second robbery. Clearly, his encounter with law enforcement and the potential outcome of the state offense was not enough to deter Defendant from committing a second robbery. So too, Defendant's time at the BOP has not been without incident. In February 2019, Ford was disciplined after BOP officers found an 11" sharpened piece of metal with a rubber handle in his locker. And, as the Court noted earlier (see FN 1), Defendant has an unexplained two-month extension of his anticipated release date occurring between his time at FCI Gilmer and his transfer to FCI Oxford.

Ford contends that his crimes were the result of "youthful indiscretion" and that the Court should factor in his young age when looking at the §3553(a) factors. But Ford fails to acknowledge that despite his violent conduct and his escalating criminal history, the sentencing judge varied from the recommended guidelines range, likely to account for his youth. He received a 12-month variance from the guidelines range on the robbery counts, but given the brandishing of a firearm, he still received a hefty term of imprisonment – and deservedly so. Any further reduction in his sentence would not strike an appropriate balance between providing just punishment for the offense, protecting the public from further crimes of the defendant, and ensuring adequate deterrence. Simply put, the §3553(a) factors do not aid Ford's request for release.

## CONCLUSION

For the above reasons, Defendant's Motion for Reconsideration of his Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 146) is DENIED.

SO ORDERED on May 15, 2023.

                                           s/ *Holly A. Brady*  
                                           JUDGE HOLLY A. BRADY  
                                           UNITED STATES DISTRICT COURT